UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

**CRIMINAL CASE NO. 16-45-DLB-CJS**

**UNITED STATES OF AMERICA**                                                                                                 **PLAINTIFF**

**vs.**                                              **MEMORANDUM OPINION AND ORDER**

**MATTHEW SHAFFER**                                                                                                               **DEFENDANT**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

This case presents the question of whether a defendant's unsupported denial of the facts in a search warrant affidavit can trigger a *Franks* hearing. For the reasons stated below, the answer to that question is no.

**I.      Factual and Procedural Background**

On August 25, 2016, Northern Kentucky Drug Strike Force (NKDSF) Agent Jeff Price obtained a warrant to search the residence of Defendant Matthew Shaffer. Price swore to the following facts in the affidavit supporting his warrant application. (Doc. # 27-1).

In August of 2016, Price spoke directly with a source of information (SOI) who had been forwarded to him from the FBI. The SOI is "familiar with methamphetamine from past involvement with the drug" and informed Price that Defendant Matthew Shaffer "was trafficking in large amounts of methamphetamine." (Doc. # 27-1 at 2). The SOI told Price that Shaffer "was a wholesale distributor of multi ounce quantities of Crystal Methamphetamine (Ice) with customers in both Northern and Western Kentucky," that the SOI "has been in Shaffer's residence on numerous occasions and has observed multiple

1

ounce quantities available for purchase," that Shaffer "always has methamphetamine available for purchase in his residence and on his person, and also often carries a handgun due to his lucrative and dangerous activities." (*Id.*) In addition, the SOI provided Price with Shaffer's address and stated that Shaffer "is [a] high ranking member of the outlaw motorcycle club 'The Iron Horsem[e]n.'" (*Id.*)  Price stated that the SOI "has provided information regarding drug trafficking to the FBI that has been proven true and correct through independent sources or investigation." (*Id.*)

Acting on the information received from the SOI, Price conducted an independent investigation.  He identified the Defendant and the address given to him by the SOI on multiple law enforcement databases. (*Id.*)  Price confirmed that the database information matched the SOI's physical description of Shaffer. (*Id.*)  And Price found that Shaffer's criminal history included a pending felony charge for possession of methamphetamine in Kenton County, Kentucky, and two prior felony drug trafficking convictions in Ohio. (*Id.*)

On August 24, 2016, Price retrieved the trash "placed / discarded at the curb in front of" Shaffer's residence. (*Id.*)  He searched a bag of discarded trash and located "mail matter with Shaffer's name and the address" of Shaffer's residence. (*Id.*)  In the trash, he also found "a small Ziploc bag containing a crystal substance residue, appearing to be crystal methamphetamine." (*Id.* at 3).  The residue tested positive for methamphetamine. (*Id.*)  Price photographed the positive test and processed the Ziploc bag and mail matter as evidence. (*Id.*)  The next day, NKDSF agents observed Shaffer outside his residence working on a motorcycle with another white male. (*Id.*)

Price sought a search warrant for Shaffer's residence on August 25, 2016. (*Id.*) The warrant application noted that he believed there was methamphetamine, drug trafficking

2

paraphernalia, and weapons to protect the sale of contraband in Shaffer's residence. (Doc. # 27-1 at 1). Price referenced his prior training and experience with drug trafficking investigations as support for this belief. (*Id.* at 3). The warrant issued that afternoon and NKDSF officers executed it that evening. (Doc. # 27-2).

Shaffer was originally indicted on October 13, 2016 (Doc. # 8). On December 8, 2016, the grand jury returned a superseding indictment charging Shaffer with possession with intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1), possession of a firearm in furtherance of a drug-trafficking crime in violation of 18 U.S.C. § 924(c)(1), being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), and possession with intent to distribute a mixture containing methamphetamine in violation of 21 U.S.C. § 841(a)(1). (Doc. # 23).

Shaffer has moved to suppress the evidence from the warrant (Doc. # 21), arguing that Price's supporting affidavit contained several falsehoods and material omissions and that the information from the SOI was stale. Shaffer also requested an evidentiary hearing to challenge the veracity of Price's statements in the affidavit under *Franks v. Delaware*, 438 U.S. 154 (1978). After briefing was completed (Docs. # 27, 29), the Court held oral argument on the motion (Doc. # 31) and allowed Shaffer to submit additional materials in support of his request for a *Franks* hearing (Docs. # 34, 40). For the reasons explained below, the request for a *Franks* hearing and the motion to suppress will be **denied**.

II.     **Analysis**

    A.     ***Franks* Hearing Standard**

The Fourth Amendment requires a hearing to challenge the truthfulness of the

3

factual statements made in an affidavit supporting a search warrant "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit," and if "the allegedly false statement is necessary to the finding of probable cause." *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978).

Making a substantial preliminary showing of a knowing falsehood in a search warrant affidavit is a "heavy burden" for the defendant, *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990), because the affidavit enjoys "a presumption of validity," *Franks*, 438 U.S. at 171. For that reason, "the attacker's challenge must be more than conclusory and must be supported by more than a mere desire to cross-examine" to trigger an evidentiary hearing. *Id.* at 171-72. Instead, "[t]here must be allegations of deliberate falsehood or of reckless disregard for the truth," "those allegations must be accompanied by an offer of proof," and "[a]ffidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained." *Franks*, 438 U.S. at 171-72.

*Franks* is generally "inapplicable to the *omission* of disputed facts," "except in the *very* rare cases where the defendant makes a strong preliminary showing that the affiant *with an intention to mislead* excluded critical information from the affidavit." *Mays v. City of Dayton*, 134 F.3d 809, 816 (6th Cir. 1998) (first emphasis added). As a result, "[a]lthough material omissions are not immune from inquiry under *Franks*, we have recognized that an affidavit which omits potentially exculpatory information is less likely to present a question of impermissible conduct than one which affirmatively includes false information." *United States v. Atkin*, 107 F.3d 1213, 1217 (6th Cir. 1997). And, in any case, "[t]he deliberate falsity or reckless disregard whose impeachment is permitted . . . is

4

only that of the affiant, not of any nongovernmental informant." *Franks*, 438 U.S. at 171-72.

A *Franks* hearing is not required if the allegedly false statement in the warrant affidavit is not necessary to the finding of probable cause. *Franks*, 438 U.S. at 155-56. In other words, if there is sufficient content to support a finding of probable cause remaining in the warrant affidavit after "material that is the subject of the alleged falsity or reckless disregard is set to one side," no *Franks* hearing is required. *Id.* at 171-72.

### B. Allegedly False or Omitted Material

Shaffer alleges that the following statements in the warrant affidavit are false or that the following facts were intentionally omitted by NKDSF Agent Price:

1. <u>Trash Pull</u>: Shaffer claims that Price never retrieved his trash and that there was no contraband in his trash.

2. <u>Reliability of the SOI</u>: Shaffer claims that Price withheld the SOI's criminal history because the SOI was arrested or charged with a crime at the time he provided the information, which undermines the SOI's reliability and frustrates probable cause. Shaffer maintains that this information should have been disclosed to the magistrate judge.

Shaffer also claims that Price's statement that the SOI provided information about drug trafficking to the FBI that was verified through independent investigation is false, or at least misleading. According to Shaffer, the SOI had not provided information to law enforcement before this case, and any information the SOI provided about Shaffer's criminal history or membership in the outlaw motorcycle gang The Iron Horsemen was a matter of public record that does not bolster the SOI's veracity.

5

### C.   Shaffer Fails To Make a "Substantial Preliminary Showing"

#### 1.   Trash Pull

In a handwritten statement, Shaffer calls the trash pull "fictitious" and claims repeatedly that there was no contraband in his trash. (Doc. # 34-1). Shaffer acknowledges that he took his trash to the curb before the 10:13 a.m. pickup on Wednesday, August 24, 2016,[1] but claims that Price could not have searched it because someone in the house "surely" would have heard Price getting into the trash. (Doc. # 34-1 at 1). In support, Shaffer states that his children are usually up at 6:30 a.m. for school, that the curb is roughly 15-20 feet from the house and another 5 feet from the master bedroom window, that he leaves the porch light on at night, and that he often has to scare raccoons away from the trash during the night. (*Id.*) Shaffer concludes this point with a rhetorical question: if the trash pull really did occur, "why would I have hired a forensic expert to pull video footage from the house[']s wi-fi cameras to prove my truth?" (*Id.* at 2).

Shaffer also claims repeatedly that there was no contraband in his trash. He argues that his home is a "family residence (children), not a drug house, stash house or a place of Narcotic Sales." (Doc. # 34-1 at 3). Shaffer supports this assertion by observing that there is no residue visible in the photograph of the Ziploc bag that tested positive for methamphetamine, and that there is no lab report from North Central Laboratory for the

---

1  Shaffer states that he took his trash to the curb between 1:45 and 2:00 a.m. on Tuesday, August 23, 2016. (Doc. # 34-1 at 1). However, because his trash was picked up at 10:13 a.m. on the 24th (Doc. # 34-4) and that Shaffer has had problems with raccoons getting into his trash (Doc. # 34-1 at 1), it is probable that Shaffer meant that he took out the trash in the early hours of August 24, not August 23. Regardless, Shaffer confirms that he did place his trash at the curb on or before the date Price swore that he searched it. Shaffer's dispute with the warrant affidavit is therefore whether Officer Price actually searched his trash, and what he found, not whether Shaffer's trash was placed on the curb in the first place.

6

Ziploc bag even though it was sent there for testing. (*Id.* at 2-3).

After oral argument on the motion to suppress, Shaffer submitted several documents in addition to his handwritten statement, including photographs of surveillance cameras at his residence, a photograph of a video monitor in his house that is connected to the surveillance cameras, a statement from the garbage disposal company about when his trash was picked up, a photograph of the Ziploc bag allegedly retrieved from the trash pull, photographs of the mail matter allegedly retrieved from the trash pull, lab reports from North Central Laboratory, the sunrise time on August 24, 2016, an email from a forensic expert who examined the cameras at Shaffer's residence, and photographs of the exterior of his residence. (Doc. # 34 at ¶¶ 1-9, 11; Docs. # 34-2 to 34-10). Unfortunately for him, none of these items help Shaffer establish the required substantial preliminary showing that Price made intentional or reckless misstatements about the trash pull.

First, the photographs of the surveillance cameras, video monitor, and exterior of the residence do not purport to show anything from the day of the trash pull whatsoever. (Docs. # 34-2, 34-3, 34-10). Indeed, the forensic expert Shaffer hired to examine his surveillance video said "[t]here is no formatting on the drive" and "[t]he drive has not been used to record video." (Doc. # 34-9; Doc. # 34 at 3). The absence of proof does not support Shaffer's assertion that the trash pull was fictitious.

Second, the fact that the sun rose at 7:01 a.m. and that Best Way Disposal picked up Shaffer's trash at 10:13 a.m. on August 24 does not show that Price falsified the trash pull. (Docs. # 34-4, 34-8). Even assuming that Shaffer put out his trash at 2:00 a.m. on August 24, five hours elapsed before sunrise and four-and-a-half hours elapsed before Shaffer's children awoke for school during which Price could have retrieved the trash.

7

(Doc. # 34-8; Doc. # 34-1 at 1). Given this range, Shaffer's attempt to put time constraints on the trash pull do not amount to a "substantial preliminary showing" that it did not occur. *See United States v. Green*, 572 F. App'x 438, 443 (6th Cir. 2014) (testimony of two neighbors that drug trafficking did not occur on defendant's property is not a substantial preliminary showing of falsity in part because the neighbors were away from their homes for a significant period of time).

Third, Shaffer's contention of a fictitious trash pull is not supported by photographs of the mail allegedly retrieved from his trash. (Doc. # 34-6). Shaffer suggests that because Price's photographs of the receipt and letter from the alleged trash pull bear Shaffer's name and address but do not show a date, they cast doubt on Price's sworn statement that he conducted the trash pull on August 24, 2016. Not so. A claim that mail bearing Shaffer's name and address might show an arguably inconsistent date "is the very sort of speculative claim that district courts are not supposed to hear" on a motion like this one. *United States v. Pirosko*, 787 F.3d 358, 380 (6th Cir. 2015) (denying a *Franks* hearing where defendant alleged that he might be able to point to a misstatement if he were allowed to examine the government's software).

Finally, Shaffer submitted Price's photograph of the Ziploc bag pulled from his trash and noted absent lab tests to support his contention that there was no contraband in his trash. (Docs. # 34-5, 34-7). Shaffer claims that the photograph shows that "the baggie that allegedly had contraband in it that was allegedly pulled from the trash showed no signs of residue and was not clouded in any way." (Doc. # 34 at 3). That is hardly a substantial preliminary showing of an intentional misstatement. Residue is, by definition, a small amount of something–an amount that might not be visible in a photograph. By contrast,

8

a positive field test for methamphetamine is visible in the photograph Shaffer submitted, just as Price described in his affidavit. (Doc. # 27-1 at 3). And because it is the field test, not the North Central Laboratory test, that Price describes in his affidavit as his reason for believing Shaffer's residence would contain evidence of drug trafficking, the absence of the North Central lab report does not support a substantial preliminary showing of intentional falsity. (*Id.*)

With those documents set aside, all that remains are Shaffer's assertions that the trash pull did not occur (because he claims he would have heard it) and that there was no contraband in his trash (because he implies he did not put it there). Without an offer of proof, those conclusory assertions are insufficient to overcome the presumptive validity of a search warrant affidavit to trigger a *Franks* hearing. *Franks*, 438 U.S. at 171-72 (a defendant's assertion "must be more than conclusory and must be supported by more than a mere desire to cross-examine"). If Shaffer's speculative, conclusory statements suffice, every defendant could manufacture a constitutional entitlement to an evidentiary hearing on a search warrant merely by disagreeing with the warrant affidavit. That would turn the "presumption of validity" of the warrant affidavit into a nullity. And it would subvert the purpose of the "substantial preliminary showing" standard–which is "to prevent the misuse of a veracity hearing for purposes of discovery or obstruction." *Franks*, 438 U.S. at 170. The Fourth Amendment and *Franks* do not require such a drastic result.

Other courts confronting this situation agree. In *United States v. McDonald*, 723 F.2d 1288 (7th Cir. 1983), a defendant offered testimony at a suppression hearing that contradicted the search warrant affidavit. The defendant said that he was not at home

during the time he allegedly offered drugs to an informant and argued that therefore, no informant existed and that the affiant falsified his entire affidavit. The defendant's "offer of proof" at the suppression hearing was the testimony of a witness who accounted for the defendant's whereabouts for part of the night when the drug sale allegedly occurred. The Seventh Circuit explained that "the only testimony to support [defendant]'s conclusory statement that no informant existed is [his] own self-serving statement as to his whereabouts from the time that [the witness] left the boat until the time that the search warrant in question was issued." *Id.* at 1294. The court held that a *Franks* hearing was not required because the defendant's unsupported statement is not a "substantial preliminary showing" of an intentional falsehood in light of the "presumption of validity" that warrant affidavits are entitled to. *Id. See also United States v. Reed*, 726 F.2d 339, 342 (7th Cir. 1984) ("[T]he *Franks* presumption of validity of an affidavit supporting a search warrant cannot be overcome by a self-serving statement which purports to refute the affidavit."); *United States v. Johnson*, 580 F.3d 666, 671 (7th Cir. 2009) (quoting *Reed*); *United States v. Sarras*, 575 F.3d 1191, 1219 (11th Cir. 2009) (same); *United States v. Pace*, 898 F.2d 1218, 1227-27 (7th Cir. 1990) ("Savides' self-serving statement in his affidavit that he never accepted bets on the number listed in the warrant affidavit is not sufficient to require a *Franks* hearing, and the fact that his number was unlisted ignores that police have access to phone numbers that private citizens do not.") (citing *McDonald*, 723 F.2d at 1294).

To the extent that Shaffer argues he is entitled to additional information about the timing of Price's conversation with the SOI and trash pull, he is wrong. Shaffer claims that "the truth is NO contraband existed in my trash nor was there time for an interview of the [SOI] and a warrant to have happened even hypothetically if it were there." (Doc. # 34-1

10

at 2-3). But there is no requirement under the Fourth Amendment that a warrant had to be obtained *before* the trash pull. "There is no reasonable expectation of privacy in garbage left outside for public collection." *California v. Greenwood*, 486 U.S. 35, 40 (1988). And the warrant was not obtained until the afternoon of the next day. Shaffer's timeline concerns are overblown.

### 2. Reliability of the SOI

Shaffer's claims about the reliability of the SOI focus on alleged omissions in Price's affidavit about an individual Shaffer believes to be the SOI. Shaffer claims that "[t]he [SOI] is currently incarcerated for impersonating a police officer, home invasion, and numerous other charges." (Doc. # 34-1 at 3).[2] Shaffer expresses shock that "the word of a man who continues to violate the law even after cooperating with police is considered reliable!" (*Id.*) He maintains that the SOI's criminal history should have been disclosed in Price's affidavit, and if it was, there could be no finding of probable cause.

Additionally, in his briefing and at oral argument (Doc. # 31), Shaffer argued that Price's statement that the SOI had "provided information regarding drug trafficking to the FBI that has been proven true and correct through independent sources or investigation" (Doc. # 27-1 at 2) was either false because the SOI had not provided information before this case, or misleading and irrelevant because the information the SOI provided to Price was publicly available and not the kind of information that should bolster his or her reliability.

---

2      Shaffer provided and the Court reviewed information about the criminal history of the individual Shaffer suspects to be the SOI. (Doc. # 40).

Neither of those claims warrants a *Franks* hearing or suppression of the evidence. The Sixth Circuit has "repeatedly held that there is a higher bar for obtaining a *Franks* hearing on the basis of an allegedly material omission as opposed to an allegedly false affirmative statement." *United States v. Fowler*, 535 F.3d 408, 415 (6th Cir. 2008). And while "[i]ndicia of an informant's credibility are certainly important in an affidavit, and the omission of known information regarding credibility can in some cases be misleading enough to be deemed a falsehood under *Franks*," *United States v. Jones*, 533 F. App'x 562, 568 (6th Cir. 2013), "not all omissions regarding credibility rise to that level," *id.*

Shaffer "has not made a strong preliminary showing that [Price] intentionally misled the magistrate judge or that the judge was not reasonably assured that the information was credible." *Jones*, 533 F. App'x at 568-69. "Although the affidavit did not include information on the [SOI's] criminal history, it contained other information suggesting that the information was credible." *Id.* For example, Price stated that "[t]he SOI is familiar with methamphetamine from past involvement with the drug" and detailed the results of Price's independent investigation that corroborated the SOI's information, including Shaffer's pending charge for methamphetamine possession, prior drug trafficking convictions, and the drug evidence from the trash pull. (Doc. # 27-1 at 2-3). In this case, as in *Jones*, "[a] simple reading of the affidavit suggests that the officers chose to collect their own information rather than rely on the word of the [SOI] alone and that they had found the [SOI]'s statements to be credible." *Id.* at 569 (finding that a *Franks* hearing was not warranted).

Nor would adding omitted information about the SOI's criminal history necessarily undermine the probable cause that otherwise existed. *See United States v. Graham*, 275

F.3d 490, 506 (6th Cir. 2001). Whether the SOI had a criminal history is not always a reason to doubt his or her reliability. "Considering that 'it is often people involved in criminal activities themselves that have the most knowledge about other criminal activities,' it is no surprise that most confidential informants are engaged in some sort of criminal activities. It would unduly hamper law enforcement if information from such persons were considered to be incredible simply because of their criminal status." *Fowler*, 535 F.3d at 416 (quoting *United States v. Martin*, 920 F.2d 393, 398-99 (6th Cir. 1990)). Sensibly, "[t]he *Franks* Court observed that the fourth amendment does *not* require 'that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information within the affiant's own knowledge that sometimes may be garnered hastily.' Rather, the *Franks* Court simply held that the government affiant must reasonably believe the allegations to be true." *United States v. Giacolone*, 853 F.2d 470, 476 (6th Cir. 1988) (quoting *Franks*, 438 U.S. at 165) (citation omitted). Because Price's independent investigation corroborated much of the information in the SOI's statement, any omission of the SOI's criminal history did not erase probable cause.[3]

Shaffer also did not show that Price's statement that "[t]his SOI has provided information regarding drug trafficking to the FBI that has been proven true and correct through independent sources or investigation" (Doc. # 27-1 at 2) was intentionally false or misleading. Shaffer offered no proof whatsoever that the SOI had not provided information

---

3   The Court notes that the charges of "aggravated burglary, abduction and impersonating a police officer" that Shaffer highlights in his supporting documents as reasons the SOI should not be trusted (Doc. # 34 at ¶ 10) were brought in January of 2017, several months *after* Price's search warrant affidavit was written. Of course, Price could not have known about that part of the SOI's criminal history before it happened.

13

to the FBI previously. Moreover, Price's affidavit details his efforts to corroborate the SOI's information through his own independent investigation, meaning that the SOI's reliability was established by sworn facts in addition to the one Shaffer challenges.[4]

### D. The Information in the Warrant Was Not Stale

Finally, Shaffer argues that the evidence seized from his residence should be suppressed because the information in the search warrant affidavit was stale. In particular, Shaffer argues that the lack of specificity about when the SOI was in Shaffer's residence to observe the alleged drug-trafficking operation cannot support a finding of probable cause.

"The probable cause inquiry gauges the likelihood that evidence of a crime may presently be found at a certain location." *United States v. Hython*, 443 F.3d 480, 485 (6th Cir. 2006). A warrant must be supported by "facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time." *Sgro v. United States*, 287 U.S. 206, 210 (1932). The Sixth Circuit has explained that "[t]he expiration of probable cause is determined by the circumstances of each case, and depends on the inherent nature of the crime." *Hython*, 443 F.3d at 485. "Relevant variables include 'the character of the crime (chance encounter in the night or regenerating conspiracy?), the criminal (nomadic or entrenched?), the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), [and] the place to be searched (mere criminal forum of

---

4   In his briefing, Shaffer argued that certain drug evidence recovered from his residence was marked as unrelated to the case and might have belonged to the SOI, which would further undermine his or her reliability because Shaffer believed the informant entered into a cooperative agreement with the police. (Docs. # 21 at 1-2, # 29 at 4). Shaffer declined to pursue that theory at oral argument and submitted no further information about it beyond his own speculation. The substantial preliminary showing was therefore not met.

convenience or secure operational base?).″ *Id.* (quoting *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998)). To that end, "[t]he passage of time becomes less significant when the crime at issue is ongoing or continuous and the place to be searched is a secure operational base for the crime." *Id.* The crime of selling drugs out of a residence "exists upon a continuum ranging from an individual who effectuates the occasional sale from his or her personal holdings of drugs to known acquaintances, to an organized group operating an established and notorious drug den. The inclusion of outdated information has been insufficient to render an entire affidavit stale when the affidavit as a whole establishes that the criminal activity in question is ongoing and continuous, or closer to the 'drug den' end of the continuum." *Id.*

Based on Price's affidavit as a whole, the information supporting probable cause is not stale. The SOI's information is "closer to the 'drug den' end of the continuum," *id.*, because it describes an organized drug-trafficking operation involving large quantities of drugs and a broad customer base as of August 2016. (Doc. # 27-1 at 2) (Shaffer "was trafficking in large amounts of methamphetamine"; "was a wholesale distributor of multi ounce quantities"; had "customers in both Northern and Western Kentucky"; "Shaffer *always* has methamphetamine available for purchase in his residence and on his person, and also *often* carries a handgun due to his lucrative and dangerous activities." (emphasis added)). This is more indicative of ongoing criminal activity than the evidence in *Hython*, where "the investigation consisted solely of one modified controlled buy" and "the only other possible suggestion that the house in question was an operational base for a continuing enterprise is that the unidentified female 'advised the informant in the past that her source of crack cocaine is subject in the city of Steubenville.'" *Hython*, 443 F.3d at 486.

15

In addition, the day before Price obtained the warrant, the trash pull resulted in a positive test for methamphetamine in Shaffer's trash. Thus, even assuming that some of the information in the affidavit could be "stale," it was refreshed by the discovery of contraband in Shaffer's trash. "Where recent information corroborates otherwise stale information, probable cause may be found." *United States v. Henson*, 848 F.2d 1374, 1381-82 (6th Cir. 1988) (quoting *Emery v. Holmes*, 824 F.2d 143, 149 (1st Cir. 1987)). In light of all this information, the fact that the affidavit does not state the precise date on which the SOI was in Shaffer's residence is not fatal to probable cause.

Alternatively, even without the statements of the SOI, the search warrant affidavit contains probable cause for a search of Shaffer's residence. Although a trash pull alone may not be sufficient for probable cause, "[i]t is well established in this Circuit that drug paraphernalia recovered from a trash pull establishes probable cause to search a home when combined with other evidence of the resident's involvement in drug crimes." *United States v. Abernathy*, 843 F.3d 243, 251-52 (6th Cir. 2016). Courts owe the issuing magistrate "great deference" on the question of probable cause, and "so long as the magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (internal quotation marks and alterations omitted). Considering the results of the trash pull in addition to Shaffer's criminal history, including a pending charge for methamphetamine possession and prior drug trafficking charges, there was probable cause for a warrant here, and a *Franks* hearing is therefore not required. *See Franks*, 438 U.S. at 172 ("[I]f, when material that is the subject of the alleged falsity or reckless disregard is

set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.").

**III.    Conclusion**

Accordingly, for the reasons stated herein, **IT IS ORDERED THAT** Defendant Shaffer's Motion to Suppress and request for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) (Doc. # 21) are **DENIED**.

This 3rd day of March, 2017.



Signed By:
*David L. Bunning*
United States District Judge

K:\DATA\Opinions\Covington\2016\16-45 MOO denying MTS - DE 21.wpd