UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| Plaintiff/Respondent, | ) ) | No. 2:16-CR-45-DLB-HAI-1 |
| v. | ) ) | RECOMMENDED DISPOSITION |
| MATTHEW SHAFFER, | ) ) ) | |
| Defendant/Movant. | ) ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

On December 7, 2020, Federal prisoner Matthew Shaffer filed a motion to vacate his conviction and sentence under 28 U.S.C. § 2255, accompanied by a memorandum and exhibits. D.E. 200. The government responded in opposition and attached an affidavit from Shaffer's trial counsel. D.E. 219. Shaffer replied and attached an affidavit from his birth mother, Kim Harrill. D.E. 223. The Court determined that an evidentiary hearing was warranted and issued an order defining the issues. D.E. 226. The Court appointed counsel. D.E. 229. Both parties filed prehearing briefs. D.E. 234, 239. The Court conducted an evidentiary hearing in Lexington on December 20, 2021. D.E. 246 (minutes), 250 (transcript). The testifying witnesses were Shaffer, Ms. Harrill, and Shaffer's trial attorney Mr. Howe. The Court now recommends that Shaffer's post-conviction motion be DENIED. The Court did not solicit post-hearing briefs.

## I. Background

Shaffer went to trial on a Second Superseding Indictment that charged him with seven counts: (1) Conspiracy to distribute 50 grams or more of crystal meth, (2) possession with intent

to distribute 50 grams or more of crystal meth, (3) possessing a firearm in furtherance of a drug trafficking crime, (4) being a convicted felon in possession of a firearm, (5) conspiracy to distribute methamphetamine mixture, (6), distributing methamphetamine mixture, and (7) possession with intent to distribute methamphetamine mixture.  On August 11, 2017, a jury found him guilty of the first six charges.  On the seventh charge, the jury found Shaffer guilty of the lesser-included offense of simple possession of methamphetamine.  D.E. 150.

Shaffer was sentenced to 420 months' imprisonment.  D.E. 167.  His minimum sentences on the drug convictions were enhanced on account of a prior state conviction for trafficking cocaine, as noted in the government's § 851 notice.  That § 851 notice was filed on October 13, 2016, the same date as Shaffer's original indictment.  D.E. 12.  Shaffer also received an enhancement for obstruction of justice under USSG § 3C1.1 because he gave untruthful testimony at trial.  *See* D.E. 170 (PSR) at 10.

After judgment was entered on December 15, 2017, Shaffer appealed.  On July 8, 2019, the Sixth Circuit affirmed his convictions.  D.E. 193, *United States v. Shaffer*, 781 F. App'x 404 (6th Cir. 2019).  The Supreme Court denied certiorari on December 9, 2019.  *Shaffer v. United States*, 140 S. Ct. 606 (2019).

On December 2, 2020, by the mailbox rule, Shaffer filed his timely motion under § 2255. D.E. 200.  Shaffer alleges four grounds for relief:

(1)   Trial counsel (Steven N. Howe) was ineffective regarding the government's notice of enhanced punishment under 21 U.S.C. § 851.  D.E. 200 at 4.[1]

(2)   Trial counsel was ineffective in failing to inform Shaffer of "a potential plea offer that would have been in defendant's best interest."  *Id*. at 6.

---

[1] Page number references are to the page numbers generated by ECF.

(3)     Trial counsel was ineffective for failing to object to a prior sentence being counted under the Guidelines.  *Id*. at 9.

(4)     These three errors by trial counsel constitute cumulative error.  *Id*. at 12.

## II.  General Legal Standards

Under § 2255, a federal prisoner may seek habeas relief because his sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such a sentence, or the sentence exceeds the maximum authorized by law.  28 U.S.C. § 2255.  To prevail on a § 2255 motion alleging constitutional error, a defendant must establish that the error had a "substantial and injurious effect or influence on the proceedings."  *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).  A § 2255 movant bears the burden of proving his or her allegations by a preponderance of the evidence.  *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (per curiam).

Shaffer's Grounds for relief allege ineffective assistance of counsel ("IAC") in violation of his rights under the Sixth Amendment.  To successfully assert an IAC claim, a defendant must prove both deficient performance and prejudice.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).  To prove deficient performance, a defendant must show "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances."  *Strickland*, 466 U.S. at 688.  But "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  *Id*. at 689 (internal quotations omitted).

To prove prejudice, a movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome," which "requires a substantial . . . likelihood of a different result," "not just [a] conceivable" one. *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011). "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. When evaluating prejudice, courts generally must consider the "totality of the evidence." *Strickland*, 466 U.S. at 695. Courts may approach the *Strickland* analysis in any order, and an insufficient showing on either prong ends the inquiry. *Id.* at 697.

The Sixth Amendment right to counsel extends to the plea-bargaining process. *Lafler v. Cooper*, 566 U.S. 156, 162 (2012); *Missouri v. Frye*, 566 U.S. 134, 140 (2012). Thus, "[d]uring plea negotiations defendants are 'entitled to effective assistance of competent counsel,'" *Lafler*, 566 U.S. at 162 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)), and the two-part test set forth in *Strickland* applies. *Id.* at 162-63 (citing *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)).

In the plea-bargaining context, a defendant bears the burden of showing the outcome of the plea process would have been different with competent advice. *Lafler v. Cooper*, 566 U.S. 156, 163, (2012). And when counsel's deficient advice leads to the *rejection* of a plea, the defendant must show that but for the ineffective advice of counsel there is a *reasonable probability* he would have accepted the plea, the court would have accepted its terms, and the conviction or sentence under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed. *Id.* at 164.

4

Courts should not overturn a disposition "solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017); *see also Smith v. Cook*, 956 F.3d 377, 395 (6th Cir. 2020) ("[A]bsent evidence that [the petitioner] would have taken the deal *at the time*, he has not shown prejudice."), *cert. denied*, 141 S. Ct. 1111 (2021); *Neill v. United States*, 937 F.3d 671, 679 (6th Cir. 2019) (finding no contemporaneous evidence to substantiate the petitioner's *post hoc* testimony); *United States v. Pola*, 703 F. App'x 414, 421 (6th Cir. 2017) (finding no contemporaneous evidence to support the petitioner's *post hoc* assertions that he would not have pleaded guilty if properly counseled); *Fox v. United States*, No. 17-5352, 2017 WL 4404676, at *2 (6th Cir. July 27, 2017) (finding that no evidentiary hearing was warranted when the record did not substantiate the petitioner's *post hoc* assertions). It is the petitioner's burden to make this showing. *Smith*, 956 F.3d at 394; *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

To show prejudice in the sentencing context, a movant must establish that his "sentence was increased by the deficient performance of his attorney." *Spencer v. Booker*, 254 F. App'x 520, 525 (6th Cir. 2007) (citing *Glover v. United States*, 531 U.S. 198, 200 (2001)).

### III.  Ground One—The § 851 Notice

A defendant who is convicted of a drug trafficking crime may be subject to a sentence enhancement due to "a prior conviction for a serious drug felony or serious violent felony." *See* 21 U.S.C. § 841(b)(1). However, "to avail itself of these enhanced penalties," the government must file a notice as described in section 851. *United States v. Pritchett*, 496 F.3d 537, 541 (6th Cir. 2007). Section 851(a)(1) states:

> No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before

trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon.

21 U.S.C. § 851(a)(1).

The prosecution against Shaffer commenced by Complaint.  D.E. 1.  And there is no question that, on October 13, 2016, the government filed its § 851 notice on the same day the first indictment issued.  D.E. 12.  The § 851 notice alleges Shaffer "was previously convicted of Trafficking in Cocaine (F-1), in the Common Pleas Court for Defiance County, Ohio, in case number 02-CR-08278, on or about December 12, 2002."  *Id.*  Shaffer does not question the accuracy of the contents of the notice.  Instead, he argues he was prejudiced by his lawyer's failure to timely alert him to the existence of the notice.

Shaffer swears in his affidavit that "counsel never told [him that] he was being 851 enhanced until after trial."  Instead, "counsel told [him] that he in fact wasn't being 851 enhanced until PSR meeting" between trial and sentencing.  D.E. 200-1 at 19.  In his memorandum, Shaffer states:

> Petitioner asked counsel from their very first meeting up until the start of trial if the government had filed an 851 enhancement yet and was told every time "no not yet, we're looking good."  After jury trial during the PSR meeting with the Probation Dept petitioner asked Mr. Howe "how long the government had to file the 851 enhancement."  Mr. Howe stated "I'm not a 100% sure but I think they filed it from the very beginning."

D.E. 200-1 at 8.  Shaffer states he "asked counsel if this was an issue since it ultimately affects and raises the mandatory minimum from 15 years to 25 years."[2]  And counsel "advised it has no adverse [e]ffect as the government was seeking a Career Offender status anyways."  *Id.*  Shaffer argues this failure to inform him constitutes "ineffectiveness" and "faulty legal advice."  *Id.*

---

[2] To be specific, the § 851 notice raised the penalty (on the charges of trafficking 50 grams or more of crystal meth) from a minimum of ten years to a minimum of 20 years.  To arrive at the 25-year number, Shaffer is adding the consecutive mandatory 5-year minimum on the firearm-in-furtherance charge.

Shaffer argues counsel's failure to inform him of the § 851 notice before trial "violated Petitioner's due process rights, prejudiced the outcome of the ultimate sentence handed down, [and] deprived the district court of jurisdiction to impose an enhanced sentence under 21 U.S.C. § 851." D.E. 200-1 at 11. He argues that prejudice resulted because "it affected the overall outcome at trial and sentencing." *Id.* at 12.

Mr. Howe in his affidavit presents a different version of events concerning the pretrial discussion of the § 851 notice:

4.    Mr. Shaffer states in his §2255 Motion that we discussed the § 851 notice in our very first meeting. This would indicate that I outlined for him that he had a prior conviction that was being used to enhance his sentence if he was convicted. I would have explained that the Government would have to file an § 851 notice and I would check to see if it was filed.

5.    My recollection is that it was confirmed by me and relayed to Mr. Shaffer prior to trial that the § 851 Notice was filed. He was made aware that his minimum sentence if convicted under the Indictment was 25 years—20 years on the drug case and 5 years on the 18 USC § 924(c) count. He was further made aware that the 25 years was the floor and not the ceiling as the United States Sentencing Guidelines would also be considered. The fact that Mr. Shaffer references a discussion concerning career offender supports my recollection that the guidelines were discussed with him.

6.    Mr. Shaffer references a conversation that he and I allegedly had during the PSR Interview concerning the § 851 Notice. He states that I told him I wasn't 100% sure but I thought it had been filed at the beginning of the case. I have a list of things I review in every case prior to sentencing. It is my nature and my practice to check everything again prior to sentencing. I assured him again that I would confirm the § 851 Notice had been filed which I did.

7.    Mr. Shaffer sought guidance during my representation on how he could get his sentence under 25 years. I informed him if he was successful at trial on one or more counts it could happen and also explained the § 5K process [for obtaining a downward departure by assisting the government].

D.E. 219-1.

This Court previously noted that a review of the audio recordings shows Magistrate Judge Smith discussed Shaffer's § 851 notice and enhanced penalties on the record in open court twice.  D.E. 226 at 8.

First, Shaffer and Mr. Howe appeared for an arraignment on the original indictment on October 18, 2016.  D.E. 15.  Judge Smith explained that the three charges in the indictment were identical to the three charges in the complaint.  But she then explained that the potential penalty on the drug trafficking charge had increased on account of the government's filing of a § 851 notice.  She explained:

> Now, each of those charges carries certain potential penalties under federal law if you were to be convicted of any of those counts.  And those penalties, I know we reviewed those at the time of the criminal complaint and those do remain the same because you have been charged with the same conduct.
>
> With regard to Count 1, the controlled substance offense, I guess **one thing that has changed since I saw you on the criminal complaint, the government has filed what we call an 851 notice, which is they have entered into the record a formal notice concerning a prior drug felony conviction within your criminal record.**
>
> **So in light of that, on Count 1, if you were to be convicted of that charge, the potential maximum penalty would be not less than 20 years in prison,** so what we would call a mandatory minimum of 20 years, and not more than life in prison, a fine of not more than $20 million, and at least ten years of supervised release.
>
> On Count 2, the firearm in furtherance of drug trafficking, the potential maximum penalty as far as incarceration is not less than five years nor more than life in prison, so a minimum of five years, and not to exceed your natural life, to run consecutive or after any other term of imprisonment that is imposed, a fine of not more than $250,000, and supervised release of not more than five years.

D.E. 243 at 3-4 (emphasis added).

Thus, at the October 2016 arraignment, Judge Smith told Shaffer that a § 851 notice had been filed and that he faced a mandatory minimum of 25 years (20 for the drug trafficking charge plus 5 consecutive years on the firearm-in-furtherance charge).

Second, a superseding indictment issued on December 8, 2016.  D.E. 23.  The superseding indictment added a new Count Four, charging possession with intent to distribute a mixture or substance containing methamphetamine (no quantity).  At the December 14, 2016 arraignment on the Superseding Indictment, the § 851 notice was not explicitly mentioned.  But the audio recording shows that when Judge Smith announced the potential penalty on Count Four, it was "not more than 30 years in prison," which is the enhanced penalty.

Third, a second superseding indictment issued on March 9, 2017.  D.E. 51.  The second superseding indictment added a codefendant and three new charges.  Judge Smith addressed the new Count One, which charged a conspiracy to distribute 50 grams or more of crystal meth:

> while I'm on the subject, Count 1, the conspiracy count that I just mentioned, as far as a penalty under federal law, if you were to be convicted of that count, my read of that is that the penalty, **the potential penalty, given the 851 notice**, is the same as what it would be on Count 2.  So that is not less than 20 years and not more than life in prison, a fine of not more than $20 million, and at least ten years of supervised release.

D.E. 244 at 4.  Judge Smith also informed Shaffer that the other drug trafficking charges carried penalties of not more than 30 years' incarceration, which, again, are the enhanced penalties.  *Id.* at 4-5.

At the evidentiary hearing, Mr. Howe was shown these transcripts.  He testified they were consistent with his memory of the events, and that he also would have reviewed the penalty provisions with Shaffer outside of court.  D.E. 250 at 107-08.

Shaffer himself testified that he never saw the § 851 notice until October 2020, when he obtained his case file from Mr. Howe.  D.E. 250 at 124-25.  He also testified Mr. Howe had never told him his statutory sentencing range.  *Id.* at 125.  Shaffer testified, consistent with his affidavit, that he asked Howe at their first meeting whether an § 851 notice had been filed, and

Howe told him, "We're looking good.  The government hasn't filed anything at this time."  *Id*.
Shaffer testified he learned about the enhancement notice during the "PSI" process.  *Id*.

When asked about how Judge Smith told him about the notice and the sentencing
enhancements, Shaffer initially testified he did not recall that discussion and would not have
understood it anyway at that point.  D.E. 250 at 126.  He said he had "never dealt with the federal
system" and "didn't even know what a mandatory minimum was at my arraignment."  *Id*.
Shaffer later testified that he remembered Magistrate Judge Smith reading the charges, but he did
not comprehend all of it.  *Id*. at 148.  When asked if he remembered her telling him the penalties,
he said, "I more remember reading the penalties on the back of the indictment."  *Id*.  Shaffer
testified that once he came to understand § 851 notices, he researched them and send Mr. Howe
his findings.  *Id*. at 126-27, 152-53; *see also* Defense Exhibit #4.

> Shaffer summarized:
>
> A.    We never talked about the 851 so I never knew I had it.  I mean, I literally
>        did not ever see that document 'til October 2020, and never knew that I
>        was legitimately 851 until the PSI meeting at Campbell County.
>
> Q.    Well, did you ask him about the 851?
>
> A.    Yeah, I asked him about the 851 . . .  the couple times he came to see me, I
>        would say, "What's going on with the 851?"
>
> Q.    And what would he say?
>
> A.    "Nothing yet."
>
> Q.    But he told you it wasn't filed?
>
> A.    He told me it wasn't filed every time I talked to him.

D.E. 250 at 130.

Mr. Howe also testified consistently with his affidavit.  Concerning the § 851 notice, Mr.
Howe said,

> [Shaffer and I had] a number of discussions about it.  Most of all upon him being arraigned, it was -- I believe it was a part of the arraignment process.  I go through the penalty provisions with my clients.  If there is a predicate offense that would [increase the statutory minimum or maximum], I go through that with them.

> I spoke with [Shaffer] about it on several occasions.  He was aware that he was facing the enhanced sentence.  He made decisions based upon that.  It was discussed basically from one of the first times I met him all the way through, up until the time of sentencing.

D.E. 250 at 28.

For the reasons explored more fully in the next section, the Court finds Mr. Howe's testimony generally more credible than Shaffer's.  Additionally, Mr. Howe's testimony to the effect that he had made Shaffer aware of his actual sentencing exposure is more credible in light of the record as a whole.  Judge Smith told both Shaffer and Howe in open court that the § 851 notice had been filed.  And she discussed its effect on Shaffer's statutory sentencing range.  Surely, once Shaffer heard those sentencing ranges, he would have at least initiated a discussion with Mr. Howe if the ranges described by Judge Smith had significantly diverged from what Mr. Howe had said.  The Court does not credit Shaffer's testimony that he was kept in the dark about the § 851 notice until his presentencing interview.  Rather, the Court finds that Shaffer was aware of his enhanced sentencing ranges prior to the plea discussions explored in the next section.

Nevertheless, in the alternative, even *if* Howe had failed to inform Shaffer of the sentencing enhancement, there would be no prejudice.  First, he was informed of the enhancement anyway.  The Court described the enhancement to Shaffer at least twice.  Judge Smith told Shaffer in October 2016 and March 2017 that he faced a mandatory minimum of 20 years on the primary drug charges and that the government had filed a corresponding § 851 notice.

Further, no prejudice existed even if counsel *and* the Court had failed to mention the § 851 enhancement. As the government observes, Shaffer "does not detail any challenges counsel could have raised with regard to the notice, and with good reason. Shaffer's prior conviction of trafficking in cocaine meets the definition of a felony drug offense." D.E. 219 at 4. To be clear, Shaffer does not (and cannot credibly) allege that *the government* failed to comply with § 851. He makes no allegation that the prior conviction did not qualify as an enhancing drug felony. Furthermore, Shaffer's counsel would have been barred from challenging the validity of the conviction on account of the statute of limitations in § 851(e). That subsection forecloses challenging "the validity of any prior conviction . . . which occurred more than five years before the date of the information alleging such prior conviction." The conviction in the § 851 notice was from 2002, and the notice was filed in 2016. Thus, even if counsel and Shaffer were unaware of the § 851 notice until after trial—due to ineffective assistance—no prejudice resulted. The prior-drug-felony enhancement was unavoidable.[3]

To be clear, the Court makes the factual finding that Shaffer *was* informed of the § 851 notice by his October 2016 arraignment at the latest. This factual finding is relevant to the analysis of Ground Two.

### IV.  Ground Two—Potential Plea Offer

"[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 566 U.S. 134, 145 (2012).

---

[3] Shaffer argues in his original § 2255 motion that the notice issues in his case "deprived the district court of jurisdiction to impose an enhanced sentence." D.E. 200-1 at 11. But even a complete failure on the part of the government to file a § 851 notice does not affect the district court's jurisdiction. *United States v. DiFalco*, 837 F.3d 1207, 1218 (11th Cir. 2016). "[T]he section 851(a) requirements are not jurisdictional." *United States v. Pritchett*, 496 F.3d 537, 546 (6th Cir. 2007).

Shaffer alleges in his memorandum that his counsel failed to inform him of a "potential plea offer . . . one week before the start of his trial." D.E. 200-1 at 12; *see also id*. at 19. He states that had he been told of this offer, he would have avoided trial by pleading guilty, would have known about the § 851 notice before trial, and would have received a lighter sentence. *Id*. More specifically, Shaffer states that in May 2017 he

> asked counsel about any possible or potential plea offers from the government[.] Counsel replied with the only offer being pretty much a life sentence[. P]etitioner replied that there was 'no way' he would plea[d] to a life sentence. . . . Counsel refused to convey any counter offers on petitioner's behalf always saying they will never go for it.

*Id*. at 12-13.

Shaffer states that when he obtained trial counsel's file in October 2020, it contained an email from Assistant United States Attorney Anthony Bracke to Shaffer's counsel dated one week before trial. D.E. 200-1 at 13. That email, with the subject line "Matthew Shaffer – offer" states, in full:

> I have not tendered a formal offer and do not intend to do so unless your client expresses interest in entering a guilty plea. The United States would not consider anything less than a guilty plea to the primary conspiracy charge brought in the last superseding indictment (the one that predates the conspiracy that occurred in the jail) and a guilty plea to a 924(c) charge. His base offense level would be a 32 as part of such a plea. These offenses carry a mandatory minimum sentence of 25 years since there is a prior drug conviction. If your client is interested in a guilty plea at this time, we would be willing to give him a two point reduction for acceptance of responsibility and recommend a sentence of the **greater** of either the statutory minimum sentence or the low end of the advisory guideline range.

D.E. 200-2 at 6. Concerning the potential sentence under this potential agreement, Shaffer's habeas counsel argues that Shaffer's Guidelines Range—upon a plea of guilty with acceptance of responsibility and a Criminal History Category of IV—could have been as low as 300 months (25 years) to 322 months. D.E. 234 at 14.

Shaffer states he "seeks to reinstate the government's potential plea offer [which] was never conveyed to him by his counsel." D.E. 200-1 at 13. He states that had known of this offer, he would have accepted it; he would have not gone to trial because he would have known he was facing a 25-year minimum sentence; and he would have realized that the government was not in fact seeking a life sentence. *Id*. at 13-14. Shaffer argues that "the offer was a formal one with a fixed expiration date," but counsel allowed the offer to expire without sharing it with Shaffer. *Id*. at 14.

The government initially argued there can be no deficient performance under these circumstances because no *formal* offer had been made. D.E. 219 at 5-7. But a formal offer is not a necessary prerequisite to deficient performance in plea bargaining. For example, the Sixth Circuit recently found ineffective assistance in plea negotiations when the government had submitted no offer at all, much less a formal one. *Byrd v. Skipper*, 940 F.3d 248, 255-56 (6th Cir. 2019), *cert. denied*, 140 S. Ct. 2803 (2020). "The Supreme Court has never cabined that right to negotiations that take place only after an offer has been made." *Id*. at 255; *see also Robinson v. United States*, No. 3:13-CR-71-TAV-HBG-6, 2020 WL 5805513, at *4 (E.D. Tenn. Sept. 29, 2020) (citing *Byrd* and noting that the Sixth Amendment may impose a duty on counsel "upon receipt of an informal or nascent plea offer or after a preliminary plea discussion").

So, the lack of a formal offer does not answer the question. To assess deficient performance, the Court must resolve the factual dispute of whether Mr. Howe told Shaffer about Mr. Bracke's proposed plea terms.

Mr. Howe states in his affidavit that

9.    Mr. Shaffer was adamant that he would not plead to a minimum of 25 years. It was explained to him that if he went to trial the sentence would likely be more than 25 years and could not be less if convicted as charged. I requested a plea agreement be prepared by the government, however, the

response was that the government would not prepare one unless Mr. Shaffer was prepared to plead guilty and accept the greater of 25 years or the guideline recommended sentence. Mr. Shaffer would only get two points off for acceptance of responsibility for pleading guilty. The government would not agree to a three point reduction.

10. Again this was discussed with Shaffer and he was more adamant that he would not plead guilty to a twenty five year sentence, he would go to trial and reserve his right of appeal.

D.E. 219-1. Thus, according to Mr. Howe, he conveyed the terms proposed in Mr. Bracke's email to Shaffer, but Shaffer declined to bargain under those terms.

In his reply brief, Shaffer disputes Howe's recollections: "Mr. Howe's statement that Shaffer was more adamant that he would not plead guilty to a 25 year sentence, he would go to trial and reserve his right of appeal are not accurate." D.E. 223 at 5.[4]

At the evidentiary hearing, Mr. Howe testified consistently with his affidavit. Concerning the "offer email" (Defense Exhibit #16), Mr. Howe testified he had asked Mr. Bracke to prepare a formal plea agreement:

I don't know if it was a phone call. [Mr. Bracke and I] saw each other at court. I have a number of cases, he has a number of cases, and I said, "Hey, listen, you know, would you be interested in doing a plea agreement at least that I could take to [Shaffer] and hand it to him?" And I think this [email] was his response.

D.E. 250 at 73-74. Mr. Howe testified he started this plea discussion on his own initiative. Shaffer had not instructed him to seek a formal plea offer. After he received the "offer email," Mr. Howe did not respond in writing. But he testified he did inform Mr. Bracke at some point that Shaffer was not going to plead to 25 years or greater. *Id*. at 74-75.

Mr. Howe also testified that he recalled communicating Mr. Bracke's plea conditions to Shaffer:

---

[4] Shaffer goes on to state that "every defendant has the constitutional right to appeal their conviction regardless of whether or not they accept a plea agreement or was convicted thru a trial." *Id*. But on this point Shaffer appears unaware that plea agreements in this District routinely include waivers of the defendant's appellate rights.

Q. Was this email ever communicated to Mr. Shaffer?

A. It absolutely was.

Q. How?

A. When I met with him. I talked to him [about the email on or before the first day of trial, August 7, 2017, six days after the email].

. . . .

Q. And you went to visit Mr. Shaffer, and you showed him that email during the week prior to trial?

A. I visited Mr. Shaffer. Whether I showed him the email or whether I told him the contents of the email, I can't sit here and tell you one way or the other.

D.E. 250 at 75-76.

Mr. Shaffer's counsel asked Mr. Howe,

Q. So to kind of wrap this area up, you took this email to him the week before trial, showed it to him?

A. I didn't say I took that email. What I did was I told him the contents of the email. Whether I actually took it and read it or whatever, I . . . can't say that one way or the other. I would have told him the substance of this email, that this is what you're looking at, this is where you are.

Q. Now again, it sounds like you're testifying to habit and not what you actually remember.

A. I remember talking to him about the 25 years or the higher of the guidelines. I remember that specifically.

Q. And his reaction was to refuse it?

A. He was livid.

Q. Okay. And that – that's the week before trial?

A. [Whether he would plead guilty in exchange for 25 years] had been a discussion ongoing all the way up [to trial]. This was confirmation of that discussion that I had with Mr. Bracke.

D.E. 250 at 80-81.

16

About his willingness to negotiate a plea, Shaffer testified,

> if I would have known that I could have pled to the mandatory minimum sentence, I would have pled to the mandatory minimum sentence. I'm not dumb. You can't beat the feds at trial; I know that. I think everybody knows that . . . I wasn't trying to go to trial.

D.E. 250 at 127-28. He testified he thought his mandatory minimum was 15 years, and, once he realized he was not going to obtain a downward departure for substantial assistance,[5] he had been asking his attorney to negotiate a 17-year sentence. *Id*. at 128.

Shaffer's birth mother, Kim Harrill, also testified via telephone. She lost custody of Shaffer when he was less than two years old, and they did not meet again until 2008. D.E. 250 at 14. According to Ms. Harrill, Shaffer "was ready to make a plea deal . . . . he didn't want to go to trial. He wanted to get this over with so he could, you know, go on with his life." *Id*. at 9-10. But Shaffer's lawyer, she said, wanted to take the case to trial and was not prepared to negotiate a guilty plea. *Id*. Ms. Harrill said Shaffer told her "quite a few times" that he wanted to take a plea and not go to trial. *Id*. at 10. Ms. Harrill testified she had never spoken to Mr. Howe. *Id*. at 12. She also had no contact with Shaffer's adopted mother, who has custody of Shaffer's children. *Id*. at 14-16. Ms. Harrill testified she knew Shaffer was facing 25 years to life if convicted at trial. *Id*. at 16-17. As for plea negotiations, Ms. Harrill said Mr. Howe "wanted him to take the 25 years to life, and Matthew wanted to make a deal, and he, and he never did." *Id*. at 18. But she later testified she was not aware of the 25-year minimum; there may have been some confusion on this point. *Id*. at 21-23.

---

[5] There was discussion at the evidentiary hearing concerning Shaffer's attempt to obtain a plea bargain that included a downward departure for substantial assistance by making proffers to the government. Although Shaffer attended two proffer sessions, the government declined to move for a downward sentencing-guidelines departure under USSG Chapter 5, Part K, and 18 U.S.C. § 3553(e). D.E. 250 at 51-52, 67-69. Shaffer testified at the hearing that Mr. Howe told him after the proffers that Bracke thought Shaffer was "a lying piece of shit" and the government did not believe anything Shaffer said in his proffer sessions. *Id*. at 133.

So, Ms. Harrill's testimony agreed with Shaffer's in that Shaffer expressed interest in pleading guilty on a favorable plea deal. But her testimony also appeared to agree with Mr. Howe's testimony in that Shaffer was not willing to plead guilty for a 25-to-life sentence. Ms. Harrill appeared eager to help Shaffer in these proceedings. Nevertheless, her testimony undercut Shaffer's in that she indicated Shaffer had no interest in pleading guilty in exchange for a 25-year sentence.

At the end of his testimony, Shaffer revealed he is generally willing to say whatever he needs to get out of prison earlier:

Q. In this particular case, you testified at trial; is that correct?

A. Yes, sir.

Q. Under oath?

A. Under oath.

Q. Did you tell the truth?

A. Yes.

Q. Okay. So when -- at trial you denied knowing that there were drugs in your home, that was the truth?

A. It is the truth.

Q. Okay. But your testimony today is that if it would have gotten you a plea agreement, you would have been willing to testify under oath that you knew about the drugs and intended to distribute them; is that true?

A. I would have admitted guilt for a good plea bargain. And that's a common practice a lot of defendants. A lot of defendants plead guilty to things, whether they are guilty or not, and it's no different.

Q. So if it would have benefited you, you would have been willing to lie to the Court under oath?

A. I would have laid on the sword.

Q. And that's still true, correct, if it would benefit you, you're willing to lie to the Court under oath?

A. No, I'm not willing to lie to the Court under oath.

Q. Okay. But you would have been willing to do it if you thought it would help you get a plea bargain?

A. If it would have been a difference between a life sentence that you were supposedly trying to give me versus, Hey, listen, just tell them – just get up there and say you're guilty, I would have gotten up there and said that I was guilty, yes, I would.

Q. So the difference between life and 25 years, you would have been willing to lie, but the difference between 35 and 25 you're not willing to lie; is that correct? I just want to understand what your stance was.

A. Well, I don't understand what you're saying --

Q. Well . . . If you plead guilty, you have to admit that you've actually committed the crime.

A. Right. And as many defendants do, whether or not they're really guilty or not -- you know this like I know this, is it's what it is. You know, you put them in a corner. Is a guy going to take a life sentence, or is he going to lay on the sword and say, You know what? I throw my hands up. I'm guilty. Please give me my mandatory minimum. Yes, I would have done that. I've got grand kids. I've got kids.

Q. Even if it wasn't true, you were willing to do it?

A. Yes, sir, I was.

Q. Now -- and that's still true, what you want is a plea offer, right?

A. Yes. I'd like a plea offer that I was never told about.

Q. And your intention would be to plead guilty to charges you didn't commit in order to get this plea offer; that's your intention, correct?

A. If it is mandatory that I plead guilty to count such and such and such and such, I would do that. That's, that's what I would do. I think anybody in my situation would do that.

Q. Even if it's not true?

A. I was found guilty at trial; it doesn't matter.

D.E. 250 at 155-58.

The Court finds, based on the evidentiary hearing testimony, that Shaffer is not a credible witness. Nothing in the record (aside from Shaffer's own testimony) contradicts Mr. Howe's assertion that (1) he informed Shaffer of Mr. Bracke's bargaining terms, but (2) Shaffer was unwilling to plead guilty in exchange for sentence of 25-years or more. Ms. Harrill's testimony also bolstered the idea that Shaffer was looking for a plea deal below 25 years. And finally, Shaffer revealed that he would have been willing to lie under oath to obtain a favorable guilty plea. Also weighing against Shaffer's credibility is that he received a sentencing enhancement for obstruction of justice (perjury) under USSG § 3C1.1. D.E. 170 (PSR) ¶ 37 ("Mr. Shaffer provided materially false information when he testified under oath and denied possessing crystal meth and firearms, both of which were found [during the search] of his residence."). The Court also notes from the hearing testimony that the government considered Shaffer's proffers to be untruthful, but this factor does not weigh in the Court's credibility finding.

Mr. Howe was a credible witness; Shaffer was not. The Court thus makes the factual finding that Howe did communicate to Shaffer the terms of Mr. Bracke's "offer email," and that those terms were not acceptable to Shaffer at the time. Accordingly, Mr. Howe did not render deficient performance in these nascent plea negotiations. Having found no deficient performance, it is not necessary for the Court to assess prejudice on this Ground.

## V. Ground Three – Escape Charge

Shaffer's Ground Three concerns the calculation of his Sentencing Guidelines. Shaffer alleges that counsel was ineffective for failing to object to three points that were included in his criminal history score for an Ohio escape conviction. Over ten years had elapsed after his

imprisonment on that conviction, and Shaffer asserts he served less than a year and a month of imprisonment.  D.E. 200 at 9-10; D.E. 2001-at 16.  Shaffer argues this conviction should not have been counted, and his Criminal History Category should have been IV instead of V.

The facts are not in dispute.  The government now agrees "that the points from the Escape charge were not properly assessed."  D.E. 239 at 1.

Paragraph 57 of Shaffer's PSR describes this Ohio conviction for escape, a third-degree felony, for which he was assigned three criminal history points.  D.E. 170 (PSR) at 13-14.  The PSR describes the conviction as follows:

> 07/12/1999: Guilty. Sentenced to 1 year prison, consecutive to 97-CR-153 [a robbery conviction with a three-year sentence]. 09/21/2001: Judicial release, 5 years community control. 04/12/2002: Probation violation. 04/25/2002: Probation revoked, 1 year prison imposed. Judicial release 7/11/2002.

Paragraph 57 further states,

> According to the Ohio Department of Corrections, Mr. Shaffer was given a final judicial release from custody on September 19, 2001, and placed on 5 years of Post Release Control (PRC).  Their records also confirm that he was re-admitted on April 25, 2002 for a PRC violation.  Records show he was given a final judicial release on July 11, 2002.

The only thing Mr. Howe says about Ground Three in his affidavit is, "I did not object to the Escape charge being used in the calculation of the criminal history points."  D.E. 219-1 ¶ 12.  He testified at the hearing, "I cannot tell you why I did not object to that."  D.E. 250 at 44.

Section 4A1.1(a) of the Guidelines says to "Add **3** points for each prior sentence of imprisonment exceeding one year and one month."  The application notes explain that certain prior sentences are not counted.  For example, "A sentence imposed more than fifteen years prior to the defendant's commencement of the instant offense is not counted unless the defendant's incarceration extended into this fifteen-year period."  *Id.* comment. (n.1).  Because Shaffer's

sentence on the escape charge terminated about 14 years prior to the criminal behavior in the indictment, the charge counts if the sentence of imprisonment exceeded one year and one month.

However, as the parties now agree, Shaffer's escape conviction fits properly under section 4A1.1(b) because he served less than a year and a month. Section 4A1.1(b) says to "Add **2** points for each prior sentence of imprisonment of at least sixty days not counted in (a)." Subsection (b) convictions are not counted if the sentence is "imposed more than ten years prior to the defendant's commencement of the instant offense." USSG 4A1.1, comment. (n.2). Because of the fourteen-year gap, the escape conviction (which was a two-pointer resulting in a sentence of less than a year and a month) should not have been counted. Shaffer's Criminal History Category should have been IV instead of V.

Assuming there was deficient performance related to this Guidelines-calculation error, Shaffer cannot demonstrate prejudice. Given Shaffer's offense level of 42, the Guidelines Range of 360 months to life would apply regardless of whether he was Category IV or V. *See* USSG § 5A. In fact, an offense level of 42 garners a Range of 360 months to life in *every* Criminal History Category. Thus, it looks like a successful objection at sentencing to these three criminal history points would have had no effect on Shaffer's Guidelines Range. "Sentencing Guidelines range errors that do not affect a defendant's sentence are harmless." *United States v. Carson*, 560 F.3d 566, 590 (6th Cir. 2009).

## VI.  Cumulative Error

Finally, Shaffer argues that his counsel's errors can be aggregated to establish prejudice. D.E. 200-1 at 16-17.

It is not clear that § 2255 petitioners can avail themselves of the cumulative error theory. *Dimora v. United States*, 973 F.3d 496, 507 (6th Cir. 2020) ("[W]e are uncertain whether this

theory of prejudice is available to § 2255 petitioners."), *cert. denied*, 141 S. Ct. 1693 (2021); *Hill v. Mitchell*, 842 F.3d 910, 948 (6th Cir. 2016) ("Under AEDPA, we do not recognize claims of cumulative error."); *Kissner v. Palmer*, 826 F.3d 898, 903-04 (6th Cir. 2016) ("[T]he Supreme Court has not recognized cumulative error as a basis for relief in non-capital [habeas] cases."); *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir.) ("The Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief."), *opinion corrected on denial of reh'g*, 307 F.3d 459 (6th Cir. 2002).

Here, the Court finds no deficient performance on Ground One or Ground Two.  The Court finds that Mr. Howe properly informed Shaffer of the § 851 notice, his actual statutory sentencing range of 25 years to life, and Mr. Bracke's necessary bargaining terms for any plea offer.  However, the Court presumes deficient performance on Ground Three, where defense counsel appears to have overlooked an error in Shaffer's criminal history computation.  This error was harmless.  Even if cumulative error is cognizable on a federal habeas petition, there is only a single harmless error here and nothing else to cumulate.

## VII.  Conclusion

For these reasons, the undersigned **RECOMMENDS** that Shaffer's § 2255 motion (D.E. 200) be **DENIED.**

The undersigned further **RECOMMENDS** that no Certificate of Appealability issue. Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  *See also* Rule 11 of the Rules Governing Section 2255 proceedings.  This standard is met if the defendant can show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve

encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). Here, the evidentiary hearing testimony revealed that Shaffer is not a credible witness on these matters. Mr. Howe's testimony was believable and consistent with the rest of the record. The Court rejects Shaffer's factual assertions underlying Grounds One and Two, so there was clearly no deficient performance. As to Ground Three, there was clearly no prejudice, as correcting the PSR error would not have altered Shaffer's Guidelines Range.

Finally, the parties are notified that any objection to, or argument against, denial of this motion must be asserted properly and in response to this Report and Recommendation. The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Report and Recommendation, issued under subsection (B) of the statute. *See also* Rules Governing Section 2255 Proceedings, Rule 8(b). Within **fourteen days** after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Judge. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Judge and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

This the 23rd day of February, 2022.

**Signed By:**

*Hanly A. Ingram*

**United States Magistrate Judge**